IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CIARA NELSON,<br><br>  Plaintiff,<br><br>  v.<br><br>GREAT LAKES BEHAVIORAL RESEARCH INSTITUTE, INC., DEPARTMENT OF HUMAN SERVICES, ALLEGHENY COUNTY CHILDREN YOUTH AND FAMILIES;<br><br>  Defendants. | 2:23-CV-01742-CCW |

## **OPINION**

Before the Court is a Motion to Dismiss filed by Defendant Department of Human Services, Allegheny County Children Youth and Families ("Allegheny County" or the "County"). ECF No. 48. *Pro se* Plaintiff Ciara Nelson, a former employee of Defendant Great Lakes Behavioral Research Institute, Inc. ("Great Lakes"), alleges that Allegheny County discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq* ("Title VII"). ECF No. 46. Ms. Nelson also asserts claims against the County under 42 U.S.C. § 1981 and 42 U.S.C § 1983.[1]  *Id.*  For the reasons set forth below, the Court will grant the County's Motion.

---

[1] The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Ms. Nelson's Title VII, § 1981, and § 1983 claims present federal questions.

1

I.   **Background**

Ms. Nelson's original complaint asserted Title VII claims and claims under the Occupational Safety and Health Act of 1970 ("OSH Act") against the County. ECF No. 6. On October 10, 2024, the Court dismissed Ms. Nelson's OSH Act claims with prejudice, and her Title VII claims without prejudice and with leave to amend. ECF Nos. 41, 42. Ms. Nelson timely filed an amended complaint, ECF No. 43, however, the amended complaint failed to name Great Lakes as a defendant despite the Court not dismissing all of Ms. Nelson's claims against Great Lakes, ECF No. 45. Accordingly, the Court granted Ms. Nelson "one last opportunity" to "file a Second Amended Complaint that includes all of her remaining claims, and lists all remaining defendants." *Id.* The Court warned Ms. Nelson "that she [would] not be afforded further opportunities for amendment." *Id.* Ms. Nelson then timely filed her operative Second Amended Complaint ("SAC"). ECF No. 46. The SAC asserts claims under Title VII, § 1981, and § 1983 against the County and Great Lakes. *Id.* The allegations in the SAC, taken as true, are as follows.

Ms. Nelson, who is Black, worked for Great Lakes for over five years, until she resigned on August 7, 2023. ECF No. 46 ¶¶ 1, 20, 26. Great Lakes contracts with Allegheny County to place employees in positions within the County, and in June 2021, Ms. Nelson was assigned to the County's Children, Youth and Families ("CYF") division to help establish its records department. *Id.* ¶¶ 1–2, 28. The CYF records department was initially managed by Sarah Marker, whom Ms. Nelson worked under. *Id.* ¶ 2. In April 2022, Ms. Nelson discovered that a white employee, Kristie Hayes, was being allowed to work from home, and she complained to Ms. Marker because she understood that telework was not allowed without an ADA accommodation. *Id.* ¶ 3. Ms. Nelson also asked Ms. Marker about a raise that Ms. Nelson had requested a few weeks prior because Great Lakes would not award Ms. Nelson a raise without the County's approval. *Id.* ¶¶ 3–

2

4. Ms. Nelson's complaint about Ms. Hayes' telework arrangement "w[as] not addressed in any way," and her continued requests for a raise "were often met with irritation or hostility." *Id.* ¶ 5.

In May 2022, Ms. Nelson emailed Great Lakes' human resources personnel regarding her request for a raise and Ms. Hayes' telework arrangement. *Id.* ¶ 8. Shortly thereafter, Ms. Nelson began to experience "adverse actions," beginning with "additional work on subpoena request[s], which is large volume work." *Id.* ¶ 9. After Ms. Nelson's car was repossessed in August 2022, she submitted a request to work from CYF's office in downtown Pittsburgh, which was a closer commute. *Id.* ¶ 10. Ms. Marker approved that request, but ultimately Ms. Nelson "chose to return to [her original] office, because [she] didn't like the hostile environment downtown" where Ms. Marker worked. *Id.* ¶¶ 10–11.

In October 2022, Ms. Nelson filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") after experiencing "continued racial discrimination and increased retaliation." *Id.* ¶ 12. In January 2023, Ms. Marker resigned, and in March 2023, she was replaced by Anne Cox. *Id.* ¶ 14. After Ms. Cox took over as Ms. Nelson's supervisor, things became "insufferable." *Id.* Ms. Nelson alleges that she suffered additional "retaliation and adverse actions . . . in the form of a write-up from Great Lakes for insubordination and tone in emails." *Id.* ¶ 17. In May 2023, Ms. Nelson filed a formal Charge of Discrimination against Great Lakes with the EEOC (the "EEOC Charge") for race discrimination and retaliation. ECF No. 43-6.[2] The EEOC Charge did not name or otherwise mention the County but did allege that Ms. Cox created a "hostile work environment" by "subject[ing] [Ms. Nelson] to closer scrutiny than others, requir[ing] [her] to keep track and report [her] time daily, and subject[ing] [her] to yelling and

---

[2] While Ms. Nelson has not attached the EEOC Charge as an exhibit to the SAC, she attached it as an exhibit to her earlier-filed Amended Complaint and the Court may properly consider it as a document "integral to or explicitly relied upon in the complaint." *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 178 (3d Cir. 2024).

3

screaming for no good reason." *Id.*  The County knew about the EEOC charge because Ms. Nelson raised it in "emails" and "several meetings." ECF No. 46 ¶ 37.A.  Ms. Nelson ultimately resigned from her position in August 2023 "due to the continued harassment becoming unbearable." *Id.* ¶ 20.

Great Lakes did not move to dismiss the SAC and instead filed an Answer.  ECF No. 47.  The County has moved to dismiss all claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  ECF No. 48.  The Motion is fully briefed and ripe for resolution.  ECF Nos. 49, 51, 52, 53.

## II. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim.  In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.*  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (quotation omitted) (finding that at the motion to dismiss stage it is sufficient, but not necessary, to allege a *prima facie* case). And when resolving a *pro se* plaintiff's motion, courts "liberally construe *pro se* filings with an eye toward their substance rather than their form." *See United States v. Delgado*, 363 F. App'x 853, 855 (3d Cir. 2010).

**III.    Legal Analysis**

The Court will first address Ms. Nelson's § 1981 claim, and then turn to her § 1983 claims and Title VII claims.

    **A.    Ms. Nelson Has Failed to Allege a Plausible § 1981 Claim**

Ms. Nelson asserts a § 1981 claim against the County on the belief that § 1981 "allows for individuals who are not directly employed by [the County] . . . but working under contractual obligations that are significantly controlled by [the County] to hold them liable for discrimination suffered from their employees." ECF No. 46 ¶ 29. Section 1981 guarantees "[a]ll persons . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

5

The County argues, correctly, that Ms. Nelson's § 1981 claim against it fails because § 1981 does not provide an independent remedy against state actors. ECF No. 49 at 5–6; *McGovern v. City of Phila.*, 554 F.3d 114, 120–21 (3d Cir. 2009) ("[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.") (citation omitted). Indeed, Ms. Nelson concedes that § 1981 "doesn't apply to federal, state or local governments." ECF No. 51 at 3. Accordingly, the Court will dismiss Ms. Nelson's § 1981 claim against the County with prejudice, as any amendment would be futile. *See Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) (explaining that courts should permit a curative amendment in the civil rights context unless such an amendment would be inequitable or futile).

### B.   Ms. Nelson Has Failed to Allege a Plausible § 1983 Claim

Ms. Nelson alleges constitutional claims under § 1983 against the County for "violat[ing] my constitutional rights egregiously." ECF No. 46 ¶ 30. Specifically, Ms. Nelson alleges that the County "violated my rights with their actions over the years by favoring white coworkers, retaliating against me for reporting it, and underpaying for the work required of me." *Id.*

#### 1.   Legal Framework

Section 1983 establishes a statutory cause of action to vindicate constitutional violations. 42 U.S.C. § 1983. To state a claim under § 1983, plaintiffs must plead that they were "deprived of a federal constitutional or statutory right by a state actor." *Coulter v. Coulter*, No. 23-2222, 2024 WL 163081, at *1 (3d Cir. Jan. 16, 2024); *see Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting 42 U.S.C. § 1983). Thus, courts consider whether a plaintiff has "identif[ied] the exact contours of the underlying right said to have been violated" and "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d

798, 806 (3d Cir. 2000) (en banc) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).  Further, courts must also address the state actor element, which requires an individual to "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Harvey*, 635 F.3d at 609 (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)).

While "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), it "can be held liable [for constitutional violations] when the 'execution of a government's policy or custom . . . inflicts the injury.'" *Bhatnagar v. Meyer*, No. 22-2848, 2023 WL 5378834, at *3 (3d Cir. Aug. 22, 2023) (citing *Monell*, 436 U.S. at 694).  To state a *Monell* claim, a plaintiff must allege that his "harm was caused by a constitutional violation" and that "the municipality is responsible for that violation." *Bhatnagar*, 2023 WL 5378834, at *3;  *see also Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 175 (3d Cir. 2017) ("A municipality is liable under § 1983 when a plaintiff can demonstrate that the municipality itself, through the implementation of a municipal policy or custom, causes a constitutional violation.").  "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quotations omitted).  And a "custom is a permanent and well-established practice." *Lesher v. Zimmerman*, 822 F. App'x 116, 121 (3d Cir. 2020);  *see also Andrews*, 895 F.2d at 1480 ("A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials [are] so permanent and well settled as to virtually constitute law.") (quotations omitted).

7

## 2. Ms. Nelson Has Failed to Allege a Plausible *Monell* Claim Against the County

The County argues that Ms. Nelson's § 1983 claim against it fails because she does not specify what constitutional right the County allegedly violated, nor does she sufficiently allege a causal connection between the County's actions and any purported constitutional violation. ECF No. 49 at 7. Ms. Nelson responds that "the violated rights have been stated." ECF No. 51 at 11. While the Court agrees with the County that Ms. Nelson has not specifically named the constitutional rights she believes were violated, that is not fatal to her § 1983 claims because the Court can infer that the rights at issue are Ms. Nelson's First Amendment speech rights and Fourteenth Amendment equal protection rights. *See* ECF No. 46 ¶ 30 (alleging that "the County has violated my rights with their actions over the years by favoring white coworkers, [and] retaliating against me for reporting it"). *Thompson v. Fed. Bureau of Investigation*, No. 25-CV-1095, 2025 WL 834747, at *3 (E.D. Pa. Mar. 17, 2025) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999)) ("We apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.").

However, Ms. Nelson's § 1983 claim fails for a different reason. Specifically, she has not alleged that any purported constitutional violations were caused by an official County policy or well-established custom. *See generally* ECF No. 46. The closest the SAC gets to such an allegation is that the County has been sued in the past for race discrimination and retaliation. *See id.* ¶¶ 32–36. But Ms. Nelson only cites two cases involving race discrimination, one of which settled, and does not describe the facts of either case, when they were filed, or how exactly they serve as evidence of an official County policy or custom pursuant to which her rights were violated. *Id.*; *see Cherry v. Borough of Tuckerton*, No. CV 16-0505-BRM-DEA, 2016 WL 6080813, at *10 (D.N.J. Oct. 17, 2016) ("Plaintiffs' reference to the 'two other lawsuits' fails to establish, let alone

identify, any policy or custom that resulted in a deprivation of Cherry's constitutional rights. Two isolated lawsuits, without more, fails to suggest the Defendants' conduct was so widespread as to have the force of law.") (quotation omitted). Accordingly, the Court will dismiss Ms. Nelson's § 1983 claims against the County.

### C. Ms. Nelson Has Failed to Allege a Plausible Title VII Claim Against Allegheny County

Allegheny County argues that Ms. Nelson's Title VII claims against it should be dismissed because Ms. Nelson failed to exhaust her administrative remedies. ECF No. 49 at 7–11. Ms. Nelson disagrees, arguing that she should be excused from the exhaustion requirement and/or that the Court should equitably toll the exhaustion requirement because the County had notice of Ms. Nelson's EEOC Charge and Ms. Nelson was never told that she could file a separate charge against the County. ECF No. 51 at 2. For the reasons discussed below, the Court concludes that Ms. Nelson's claims against the County are not exempt from administrative exhaustion, and accordingly those claims must be dismissed because Ms. Nelson did not exhaust her administrative remedies against the County.

#### 1. Ms. Nelson Failed to Exhaust Her Administrative Remedies Against Allegheny County

To bring an employment discrimination claim under Title VII, a plaintiff must first comply with the procedures set forth in 42 U.S.C. § 2000e–5. *See Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469–470 (3d Cir. 2001). Among these is the requirement that the plaintiff "exhaust[] administrative remedies" by filing a timely discrimination charge with the EEOC. *Id.* "The purpose of requiring an aggrieved party to resort first to the EEOC is twofold: to give notice to the charged party and provide an avenue for voluntary compliance without resort to litigation." *Glus v. G. C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977). Until the EEOC

9

concludes its investigation and issues a right-to-sue letter, a plaintiff cannot initiate a private civil action. *Burgh*, 251 F.3d at 470. "[T]he scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010) (quoting *Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978)). Thus, a private action "ordinarily may be brought only against a party previously named in an EEOC action." *Schafer v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh*, 903 F.2d 243, 251 (3d Cir. 1990).

There is an exception to this general rule, however. A party not named in the plaintiff's EEOC charge may still be sued when they "received notice and when there is a shared commonality of interest with the named party." *Id.* at 252.[3] Thus, naming a respondent in the body of an EEOC charge, but not the caption, can still be sufficient to constitute administrative exhaustion because "it provides the defendants with the requisite notice that their conduct is under formal review." *Reese v. Nw. Bank*, No. 3:21-CV-3, 2021 WL 2720837, at *3 (W.D. Pa. July 1, 2021) (Gibson, J.) (quoting *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 398–99 (E.D. Pa. 2002)). Conversely, the failure to include a party in either the caption or body of an EEOC charge precludes a finding that the plaintiff exhausted their administrative remedies unless the defendant otherwise had notice that they were subject to suit. *See Jankowski v. Fanelli Bros. Trucking Co.*, No. 3:CV-13-2593, 2014 WL 690861, at *8 (M.D. Pa. Feb. 24, 2014) (collecting cases); *Dolbin v. Tony's LLC*, No. 3:19-CV-1662, 2020 WL 5505664, at *7 (M.D. Pa.

---

[3] The *Schafer* court's articulation of this exception has been referred to as a "shorthand version" of the four-factor test set forth in *Glus v. G.C. Murphy Co.*, 562 F.2d 880 (3d Cir. 1987). *Dixon v. Phila. Hous. Auth.*, 43 F. Supp. 2d 543, 546 (E.D. Pa. 1999). The *Glus* test considered "1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; [and] 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party." *Glus*, 562 F.2d at 888.

Aug. 13, 2020), *report and recommendation adopted*, No. 3:19-CV-1662, 2020 WL 5506433 (M.D. Pa. Sept. 11, 2020).

### a.     The County Received Actual Notice of the EEOC Charge

The Court previously dismissed the Title VII claims asserted against the County in Ms. Nelson's original complaint because the EEOC Charge did not name or mention the County, and there were no allegations in the original complaint that the County had notice of the EEOC Charge. ECF No. 41 at 5–8.  In the SAC, Ms. Nelson alleges that the County had actual knowledge of the EEOC Charge because she discussed it "in emails" and in "several meetings."  ECF No. 46 ¶ 37.A. The County argues that this allegation only establishes that the County was aware that Ms. Nelson had filed an EEOC Charge against Great Lakes, not that the County "was aware of the content of the Charge," which identified County employee Ms. Cox as the subject of Ms. Nelson's complaints.  ECF No. 49 at 8.  But Ms. Nelson is not required to specifically plead that the County had notice of the content of the EEOC Charge, as opposed to notice of the existence of the charge. *See Owens v. Allegheny Valley Sch.*, 869 F. Supp. 2d 653, 659 (W.D. Pa. 2012) (Mitchell, J.) (citing *Goodman v. Lukens Steel Co.*, 777 F.2d 113, 127–28 (3d Cir. 1985)) ("The appeals court has interpreted 'received notice' to mean that the unnamed party had actual notice . . . of the EEOC complaint.").  And regardless, accepting as true Ms. Nelson's allegation that the County had notice of the existence of the EEOC Charge, the Court can draw a reasonable inference that the County also had knowledge of the content of the EEOC Charge because Ms. Nelson raised it in several emails and meetings with the County.  Accordingly, the SAC sufficiently alleges that the County "received notice" of the EEOC Charge for purposes of the *Schafer* exception to the administrative exhaustion requirement.

### b. The SAC Does Not Allege a Commonality of Interest Between Great Lakes and Allegheny County

The *Schafer* exception also requires there to be "a shared commonality of interest" between Great Lakes and the County. *Schafer*, 903 F.2d at 252. Here, the SAC falters. Courts finding a shared commonality of interest have done so where the party named in an EEOC charge and an unnamed party "were one and the same for purposes of identifying a respondent and participation in the administrative proceedings." *Urey v. E. Hempfield Twp.*, No. CIV.A. 08-5346, 2009 WL 561664, at *4 (E.D. Pa. Mar. 4, 2009) (finding Township Police Department and Township itself shared a commonality of interest); *Concha v. Perfecseal, Inc.*, No. CIV.A. 13-5709, 2014 WL 4634965, at *2 (E.D. Pa. Sept. 15, 2014) (finding parent company's interests "similar and aligned with those of [its subsidiary]").

Here, it is undisputed that the County and Great Lakes are two independent entities. ECF No. 46 ¶ 28. If Great Lakes were found liable for discrimination and retaliation, that would not automatically establish the County's liability, which weighs against a commonality of interest. *Cf. Lowenstein v. Cath. Health E.*, 820 F. Supp. 2d 639, 646 (E.D. Pa. 2011) ("Since SMMC can be held liable for its employees' discriminatory conduct, SMMC and [its employees] shared a common interest in defending against plaintiff's allegations."). And while the County and Great Lakes share a contractual relationship, that similarly does "not establish the requisite identity of interests." *See Schafer*, 903 F.2d at 252 (explaining that the plaintiff's employer and labor union did not share a commonality of interests despite being party to the same collective bargaining agreement). If there are additional facts that could tend to establish a commonality of interest, "the complaint is devoid of [them] . . . [inhibiting the Court's ability] to conduct a meaningful review of whether the commonality of interest requirement has been met." *Owens*, 869 F. Supp. 2d at 659. Accordingly, the Court concludes that the SAC does not plausibly allege a sufficient

commonality of interest between Great Lakes and the County that would excuse Ms. Nelson's failure to name the County in the EEOC Charge.

      c.  **Equitable Tolling Does Not Excuse Ms. Nelson's Failure to Include Allegheny County in the EEOC Charge**

  In her Opposition, Ms. Nelson further argues that the Court should equitably toll her administrative exhaustion requirement with respect to the County. ECF No. 51 at 12–13. Specifically, Ms. Nelson avers that "if I knew I was able to file against the County directly I would have." *Id.* Indeed, she concedes that she did not file an EEOC Charge against the County because she was "poorly informed and educated on the matter." *Id.* The SAC alleges that the EEOC "failed to advise [Ms. Nelson] on what the EEOC can and can't do for a person bringing a charge or explain filing against a third-party employer," and that the EEOC investigator assigned to Ms. Nelson's case "never at any point advised [her] that [she] was able to file a separate charge against [the County], which he could have done." ECF No. 46 ¶¶ 12–13. The County argues that Ms. Nelson knew that the EEOC Charge was filed against Great Lakes only, that she could have filed a timely charge against the County, and her failure to do so demonstrates a lack of due diligence that forecloses equitable tolling of the administrative exhaustion requirement. ECF No. 49 at 7–11. The Court agrees with the County.

  Because the question of whether a plaintiff has timely exhausted administrative remedies is "in the nature of statutes of limitation," equitable tolling of the exhaustion requirement may apply in certain circumstances. *Robinson v. Dalton*, 107 F.3d 1018, 1021–22 (3d Cir. 1997). Specifically, equitable tolling of the exhaustion requirement may be appropriate "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Id.* Here,

13

Ms. Nelson does not allege that she was actively misled, nor does she allege that she mistakenly asserted her rights in the wrong forum. *See generally* ECF No. 46. Thus, equitable tolling is only appropriate if Ms. Nelson can establish that she was "in some extraordinary way . . . prevented from asserting" her rights. *Robinson*, 107 F.3d at 1022.

"The Supreme Court has explained that '[f]ederal courts have typically extended equitable relief only sparingly. . . . We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.'" *Robinson*, 107 F.3d at 1023 (quoting *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990)). Ms. Nelson knew how to file a charge of discrimination with EEOC. And as the Court noted in its previous Opinion, "after it became clear during the administrative process that the EEOC was treating Ms. Nelson's charge as one against Great Lakes only, Ms. Nelson [had ample time to] file[] a separate charge against Allegheny County" but did not. ECF No. 41 at 8. The fact that the EEOC investigator assigned to Ms. Nelson's case against Great Lakes did not explain to her that she could file a charge against the County does not excuse her failure to do so. *See Robinson*, 107 F.3d at 1023 ("[Plaintiff's] failure to confirm the advice allegedly received on the telephone by written communication or even by another telephone communication shows an absence of the due diligence which the Supreme Court has regarded as a condition for equitable tolling."). Accordingly, the Court concludes that equitable tolling does not apply here.

For all of the foregoing reasons, the Court concludes that Ms. Nelson did not exhaust her administrative remedies against the County. Accordingly, her Title VII claims against the County will be dismissed.

### D. Dismissal of Ms. Nelson's Title VII Claims and § 1983 Claims is Without Leave to Amend

Ordinarily, courts should allow *pro se* civil rights plaintiffs leave to amend unless amendment would be inequitable or futile. *Balicki*, 875 F.3d at 151. Here, the Court finds that permitting Ms. Nelson further leave to amend with respect to her Title VII and § 1983 claims would be inequitable. "From the standpoint of providing equal justice there is an expense to defendants to shadowbox repeatedly with a vague and inadequate complaint." *Kissell v. Commw. of Pa. Dep't of Corr.*, No. 3:15-CV-58-KRG-KAP, 2016 WL 1237822, at *3 (W.D. Pa. Feb. 25, 2016) (Pesto, M.J), *report and recommendation adopted*, No. 3:15-CV-58-KRG-KAP, 2016 WL 1271080 (W.D. Pa. Mar. 29, 2016) (Gibson, J.), *aff'd sub nom. Kissell v. Dep't of Corr.*, 670 F. App'x 766 (3d Cir. 2016). Furthermore, "amendment is inequitable when it causes excessive consumption of scarce judicial time." *Id.* This case has been pending for almost two years, and Ms. Nelson is on the third iteration of her Complaint. In permitting Ms. Nelson leave to file the SAC, the Court warned that this was her "one last opportunity" and "that she [would] not be afforded further opportunities for amendment." ECF No. 45. Ms. Nelson has had ample opportunities to amend her complaint and the Court concludes that further leave would be inequitable.

### IV. Conclusion

For the foregoing reasons, the Motion to Dismiss filed by Allegheny County, ECF No. 48, will be **GRANTED**. Ms. Nelson's claims against Allegheny County will be **DISMISSED WITH PREJUDICE**.

DATED this 1st day of August, 2025.

BY THE COURT:

<u>/s/ Christy Criswell Wiegand</u>
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record

cc (via US mail):

Ciara Nelson
*Pro se*
287 Lelia Street
Pittsburgh, PA 15211